IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN BROSNAN,

    Plaintiff,

v.

COUNTRYWIDE HOME LOANS INC., AND DOES 1–99,

    Defendant.

No. C 09-00542 WHA

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

This is a motion to dismiss plaintiff's claims in a foreclosure dispute. This order finds that each of plaintiff's eight claims are either legally or factually insufficient or are preempted by federal law. Accordingly, defendant's motion is **GRANTED**.

## STATEMENT

A frequent if not vexatious litigant, John Brosnan initiated this action against defendant Countrywide for monetary damages. Nothing wrong was done to him but he allegedly purchased (for ten dollars) all claims held by someone else, a Mr. John G. Kartinos. In other words, he is in no danger of losing his home but seeks to profit from the misfortune of someone else. On June 21, 2005, Kartinos borrowed $447,800.00 from Countrywide, secured by property he was purchasing in Brentwood, California. An adjustable rate note and deed of trust were entered into between the two parties. Plaintiff asserts that in an "equity purchase agreement" dated

December 10, 2008, Kartinos agreed to sell the property to plaintiff. This agreement" also transferred to plaintiff "the entire right, title and interest" in the property, including "causes of action, if any, for monetary recovery and all rights to sue therefore . . . as fully and entirely as the same would have been held by [Kartinos] had this assignment not been made" (Opp. Exh. 1, Addendum A).

The same day he signed the purchase agreement, plaintiff asserts he sent a letter to defendant. Referencing the loan that defendant had made to Kartinos, and referring to himself as "an agent" for Kartinos, plaintiff stated in his letter that he was making a "qualified written request" under RESPA. The letter requested that defendant provide

> [c]opies of all documents pertaining to the origination of the mortgage including the loan application, Right to Cancel, Deed of Trust, note, adjustable rate note, addendum to the note for the interest only payment period, Truth in Lending statements, Good Faith Estimate (GFE), HUD 1, appraisal, and all required disclosures and rata sheets associated with this transaction.

The letter also requested a copy of the loan history. Plaintiff stated in the letter that he believed loan terms had been misrepresented, income was inflated on the application, signatures may have been forged on certain documents, "certain documents may not have presented at all," and a notary had not been present to witness the execution of "several pertinent documents." Plaintiff cited Section 6 of RESPA as requiring acknowledgment of his letter within twenty business days and an attempt to resolve the issues raised in the letter within sixty business days (Compl. Exh. 1).

Plaintiff alleges that on December 18, 2008, he spoke to one of defendant's customer service representatives who acknowledged that defendant received plaintiff's letter on December 12, 2008. He also alleges that defendant did not respond in writing to his qualified written request.

In an order dated August 18, 2009, this Court directed defense counsel to subpoena and take the depositions of John G. Kartinos and John Brosnan "to ascertain the bona fides of the alleged assignment and equity purchase agreement." The order also stated that at the hearing set for October 5, 2009, Mr. Brosnan would be expected to show cause as to why his complaint

1  should not be dismissed for lack of prosecution following his failure to appear at the duly noticed
2  case management conference.

3  In response to the August 18 order, defendant filed a supplemental memorandum in
4  support of its motion to dismiss on September 8, 2009.  Mr. Brosnan's deposition was taken on
5  September 2, 2009, but defendant was unable to serve Mr. Kartinos with a deposition subpoena
6  and therefore unable to depose him.  Defendant believes that Mr. Kartinos is attempting to evade
7  service.  Plaintiff has not filed a response to defendant's supplemental memorandum.

**ANALYSIS**

### 1. LEGAL STANDARD.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Material factual allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party, but courts are not bound to accept as true "a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.  In order to defeat a Rule 12(b)(6) motion to dismiss, a claim must be factually supported and plausible on its face — conclusory legal allegations and speculative inferences do not suffice.

Courts may consider material not appended to the complaint such as court filings and matters of public record without converting a motion to dismiss into one for summary judgment. *Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  This order finds that the documents submitted by the parties are properly the subject of judicial notice, at least as to the fact and date of their publication and the terms of contracts.  Fed. R. Evid. 201(b)(2).

### 2. DEFENDANT'S ARGUMENTS.

Defendant first argues that plaintiff does not have standing to pursue any claims regarding this property because he has not shown that he has "an actual and substantial interest in the subject matter of the action and [that he] would be benefitted or injured by the judgment in the action." *Martin v. Bridgeport Cmty. Ass'n, Inc.*, 173 Cal. App. 4th 1024, 1031–32 (Ct. App. 2d

3

Dist. 2009). Plaintiff, however, has since provided the Court with a copy of an equity purchase agreement between himself and Kartinos that demonstrates that plaintiff does have a "real interest" in the property. Accordingly, this order will address each of plaintiff's claims individually.

**A.     Racketeer Influenced and Corrupt Organizations Act**.

Plaintiff's first claim is that defendant has operated its business in violation of RICO. Defendant moves to dismiss on the ground that the claim is factually insufficient.

Defendant's motion correctly sets out the most basic requirements for successfully pleading a civil RICO claim. At a minimum, plaintiff must allege: (1) the existence of a RICO enterprise; (2) the existence of a pattern of racketeering activity; (3) a nexus between the defendant and either the RICO enterprise or the pattern of activity; and (4) a resulting injury to business or property. *Occupational-Urgent Care Health Sys., Inc. v. Sutro & Co.*, 711 F. Supp. 1016, 1021 (E.D. Cal. 1989). A "pattern of racketeering activity requires at least two acts of racketeering activity" — the "predicate acts." 18 U.S.C. 1961(5). The pleading requirements for a RICO claim vary depending on what plaintiff alleges are the "predicate acts." If a plaintiff alleges fraudulent acts as the predicate acts, he must comply with the requirement of Rule 9(b) that circumstances constituting fraud be stated with particularity — he must set forth an explanation of how or why alleged statements or concealments are false or misleading. *In re Glenfeld, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 (9th Cir. 2004).

Plaintiff's only contention regarding a "pattern of racketeering activity" is his broad claim that defendant has "acted the same way in thousands of loans" (Compl. ¶ 5). If the intent of this statement was to allege that defendant acted fraudulently in thousands of loans, the plaintiff has failed to meet the particularity requirements of Rule 9(b). At all events, plaintiff has failed to sufficiently plead with any specificity the existence of a "pattern of racketeering activity." It is not clear from plaintiff's complaint what activity plaintiff is referring to that constitutes "racketeering," and the facts alleged do not fairly allow defendant to answer the complaint regarding this claim. Accordingly, as to plaintiff's first claim, defendant's motion to dismiss is **GRANTED**.

4

### B. Truth in Lending Act.

Plaintiff's second claim is that defendant has acted in violation of TILA. Defendant moves to dismiss on the ground that plaintiff's claim — which was brought more than three years after the loan documents were signed — is barred by 15 U.S.C. 1640(e)'s one year statute of limitations.

Plaintiff acknowledges that the statute of limitations for this claim is one year from the date of the violation. He contends, however, that defendant "hid [its] failure to comply with TILA," and therefore the doctrine of equitable tolling preserves the validity of the claim despite the statute of limitations. This is not the case.

Plaintiff's TILA claim is based entirely on his allegation that defendant failed to "make certain material disclosures" to Kartinos at the inception of the loan (Compl. ¶ 39). There is no way for defendant to have hidden its failure to make these disclosures to Kartinos — the disclosures were either made, or they were not. At all events, "[t]he failure to make the required disclosures occurred, if at all, at the time the loan documents were signed," and the statute of limitations began running at that time. *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003). The loan documents in question here were signed on June 21, 2005. The statute therefore expired on June 21, 2006. Plaintiff did not file this claim until more than two and a half years after that date. Accordingly, as to plaintiff's second claim, defendant's motion to dismiss is **GRANTED**.

### C. Fair Credit Billing Act.

Plaintiff's third claim is that defendant has violated the Fair Credit Billing Act by "[hiding] documents from the borrower" (Compl. ¶ 45). Defendant moves to dismiss on multiple grounds.[1]

As defendant's motion points out, the Fair Credit Billing Act specifically addresses requirements for rectifying "billing errors." In order to recover under the Act, plaintiff would

---

[1] This claim refers to two sets of regulations. The first regulation, 12 C.F.R. 226, was issued to implement TILA, under which this order has already established that plaintiff has not stated a claim. The second regulation cited, 12 C.F.R. 34, generally sets forth standards for real estate-related lending but is otherwise unrelated to the Fair Credit Billing Act. Plaintiff fails to explain how, if at all, defendant has not complied with this regulation.

5

have to show that he had received a billing statement from defendant that he believed to contain a billing error. He would also have to show that within 60 days of receiving that statement, he sent defendant a notice asserting the nature and amount of the alleged error and explaining his reasons for believing that the statement contains an error. 15 U.S.C. 1666(a). Plaintiff does not allege in his complaint that any billing errors were made by defendant, nor does he claim to have received any billing statements from defendant, and as such he does not allege facts sufficient to support this claim. Accordingly, as to plaintiff's third cause of action, defendant's motion to dismiss is **GRANTED**.

### D.   Real Estate Settlement Procedures Act.

Plaintiff's fourth claim is that defendant violated RESPA. Defendant has moved to dismiss on multiple grounds.

Defendant argues that plaintiff's December 10, 2008, letter requested documents and raised issues relating to loan *origination*, not to loan *servicing*, and thus did not require a response under RESPA. Under the relevant section,

> [i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information *relating to the servicing of such loan*, the servicer shall provide a written response.

12 U.S.C. 2605(e)(1)(A) (emphasis added). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. 2605(i)(3).

In his letter, plaintiff stated that he had reason to believe the following:

1. Loan terms were misrepresented at the time of application and further obscured and/or modified prior to signing.

2. Income was inflated on the application.

3. Certain statements were not provided for approval prior to closing, and that signatures may have been forged on various documents.

4. Certain documents may have not presented at all.

6

        5.    A notary was not present to witness signatures on several pertinent documents and that this transaction did not take place in a legitimate title/escrow/real-estate office with any title/escrow/real-estate professionals.

(Compl. Exh. 1). These issues, as well as the documents requested in the letter, all relate not to the ongoing servicing of the loan, but rather to the circumstances surrounding its inception. As such, no response was required from defendant, and the lack of such a response does not constitute a violation of RESPA. Accordingly, as to plaintiff's fourth claim, defendant's motion to dismiss is **GRANTED**.

      **E.**    **Breach of Contract**.

Plaintiff's fifth claim is for breach of contract. Defendant moves to dismiss on the ground that the complaint does not allege that defendant failed to comply with any provision of the contract at issue.

Defendant's motion correctly sets out the standard elements of a claim for breach of contract: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008). Defendant asserts that this claim fails because the complaint does not actually allege a breach — it asserts only that defendant did not *intend to comply* with the contract, an issue wholly irrelevant to a claim for breach of contract.

In response to this argument, plaintiff refers to a section of the California Civil Code that he previously cited in the complaint:

> Within 30 days after any mortgage has been satisfied, the mortgagee or the assignee of the mortgagee shall execute a certificate of the discharge thereof, as provided in Section 2939, and shall record or cause to be recorded in the office of the county recorder in which the mortgage is recorded. The mortgagee shall then deliver, upon the written request of the mortgagor or the mortgagor's heirs, successors, or assignees, as the case may be, the original note and mortgage to the person making the request.

Cal. Civ. Code 2941(a). Plaintiff's opposition asserts that defendant

> was aware of this provision at the time Defendant entered into contract with [Kartinos] yet Defendant had no intention of complying with [Section 2941(a)]. The new financing for the Property required Defendant to deposit the original note and [deed of trust] with the escrow company subsequent to payoff of the original note against the Property. In the alternative the Defendant

7

> could provide adequate protection to Plaintiff if Defendant did not have the original note and [deed of trust]. Defendant refused to do either.

(Opp. ¶ 74). Plaintiff's explanation amounts to an assertion that Section 2941(a) is an implied part of the loan contract, and therefore defendant's failure to comply with the section constitutes a breach of contract.

Assuming, *arguendo*, that it is reasonable to consider Section 2941(a) to be an implied part of the contract, plaintiff has still failed to allege facts that if proven would be sufficient to show Section 2941(a) *actually required defendant to act*. Plaintiff has not alleged any facts that would show the "mortgage has been satisfied." Plaintiff asserts that he "secured new financing" for the property, but this does not mean that the mortgage was "satisfied" — he is missing a step. The word "satisfied," in this context, "unquestionably means no more than paid or discharged." *Windt v. Covert*, 152 Cal. 350, 354 (1907). Plaintiff himself acknowledges that defendant would only be required to act "subsequent to payoff of the original note against the Property" (Opp. ¶ 75). Nowhere in his complaint has plaintiff alleged that the mortgage has been either paid or discharged, and therefore plaintiff cannot show that defendant was required to act under Section 2941(a), even if it were to be considered an implied part of the loan agreement.

Plaintiff has not alleged in the complaint that defendant failed to comply with the terms of the loan contract itself, nor has he alleged facts that if proven would be sufficient to show that defendant failed to comply with the requirements of Section 2941(a). Accordingly, as to plaintiff's fifth claim, defendant's motion to dismiss is **GRANTED**.

### F. Fraud.

Plaintiff's sixth claim is for fraud. Defendant moves to dismiss on multiple grounds. To succeed in a fraud claim, the elements plaintiff must show are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003). Additionally, as discussed earlier in regard to plaintiff's RICO claim, Rule 9(b) requires plaintiff to "state with particularity the circumstances constituting fraud or mistake." Under Rule 9(b), a pleading is sufficient "if it identifies the

circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989). The plaintiff must set forth an explanation of how or why alleged statements or concealments are false or misleading. *In re Glenfeld, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 (9th Cir. 2004). Defendant contends plaintiff has not met the particularity requirements of Rule 9(b). This order agrees.

The complaint states conclusorily that defendant "fraudulently induced [Kartinos] into entering a contract with them when they knew they would not be complying with the terms of the contract" (Compl. ¶ 62). This is plaintiff's own legal conclusion. Plaintiff does not sufficiently identify the nature of the alleged fraud such that defendant can prepare an adequate answer from the allegations.

Plaintiff's opposition again relies on the California Civil Code, alleging that "the intentional refusal of Defendant to comply with [Section 2941(a)] constitutes fraud" (Opp. ¶ 75). This point does not address defendant's assertions regarding the particularity requirements of Rule 9(b). Plaintiff does not explain how the alleged conduct in this claim, to the extent that it is even addressed by the complaint, was misrepresenting or fraudulent.

Accordingly, as to plaintiff's sixth claim, defendant's motion to dismiss is **GRANTED**.

### G. Libel of Title.

Plaintiff's seventh claim is for libel of title. Plaintiff asserts that defendant's recordation of a notice of default against the property is illegal because defendant "does not have the note," and "the only party with the right to record [a notice of default] is the [note] holder" (Compl. ¶¶ 68–69). Defendant moves to dismiss on the ground that California law "does not require production of the original note to proceed with a nonjudicial foreclosure" (Br. 10).

California Civil Code Section 2924 sets out the requirements for nonjudicial foreclosures in California — production of the original note is not among the requirements. Courts have also held that production of the original note is not important: "[t]he allegation that the trustee did not have the original note or had not received it is insufficient to render the foreclosure proceeding

9

invalid." *Neal v. Juarez*, No. 06-0055, 2007 WL 2140640, at *8 (S.D. Cal. 2007) (citing *R.G. Hamilton Corp. v. Corum*, 218 Cal. 92, 94, 97 (1933)).

Plaintiff cites two decisions (*In re Hwang*, 396 B.R. 757 (Bankr. C.D. Cal. 2008), and *In re Vargas*, 396 B.R. 511 (Bankr. C.D. Cal. 2008)) to support his contention that "only a person who is the holder of the note has standing to enforce the note" (Opp. ¶ 76). These cases are distinguishable, however, as they both dealt with judicial foreclosure proceedings brought by lenders — very different from the instant action, where a lawsuit has been brought against a lender to stave off a nonjudicial foreclosure.

Plaintiff has failed to allege facts that if proven would demonstrate that defendant's entry of notice of default against the property was illegal. Accordingly, as to plaintiff's seventh claim, defendant's motion to dismiss is **GRANTED**.

### H. Quiet Title.

Plaintiff's eighth claim seeks to quiet title against defendant. Defendant moves to dismiss on the ground that plaintiff has set forth no legal basis for this claim.

Plaintiff asserts in his complaint that the deed of trust must be expunged because defendant "refuses to provide proof [that it is the owner of the deed of trust] in the form of the original [deed of trust]" (Compl. ¶ 75). In his opposition, plaintiff cites sections of the California Code of Civil Procedure discussing the purpose of quiet title actions and stating that such actions may be used in conjunction with other remedies. Plaintiff cites no authority for the proposition that the deed of trust must be expunged simply because defendant refuses to produce the original.

The purpose of a quiet title action is to establish one's title against adverse claims to real property or any interest therein. Plaintiff does not deny that a loan was made in this case, and fails to articulate why it would be appropriate for title to be quieted on his behalf. Plaintiff's claim to quiet title amounts to asking the Court to award him the property while wiping away the debt owed on the loan. *Cf. Yamamoto v. Bank of New York*, 329 F.3d 1167 (9th Cir. 2003). As defendant states in its motion, plaintiff has admitted that Kartinos signed a loan agreement with defendant and that the loan agreement is secured by a deed of trust. Indeed, these two documents form the very basis for plaintiff's lawsuit. Whether defendant has or is willing to produce the

10

original note or deed of trust is immaterial here. At all events, plaintiff is clearly not the outright owner of the property in question and he has provided no support for this claim. Accordingly, as to plaintiff's eighth claim, defendant's motion to dismiss is **GRANTED**.

**CONCLUSION**

Mr. Brosnan is a frequent plaintiff in numerous lawsuits. Here, he has tried to buy a lawsuit from a third party, evidently for ten dollars. The "assignor," on notice by Mr. Brosnan, has evaded service of a subpoena designed to get to the bottom of the bona fides of the assignment. For the foregoing reasons, the complaint is without merit and must be dismissed. Any motion to amend must be filed and served by **OCTOBER 15**, **2009**, setting forth the new pleading in full and explaining why it would overcome the defects, if allowed.

**IT IS SO ORDERED.**

Dated: October 5, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE